***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Mary Moore Hoag, and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence, and modify and affirm the Opinion and Award. Accordingly, the Full Commission modifies and affirms the Opinion and Award of Deputy Commissioner Hoag.
Plaintiff raised an issue of timeliness of defendant's appeal. The Full Commission finds that defendants did not receive a copy of the Deputy Commissioner's Opinion and Award at the same time as plaintiff and that defendants appeal was timely considering when defendants received the Deputy Commissioner's Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
An employee-employer relationship existed between the parties at all relevant times.
Hartford Specialty Risk Services is the third-party administrator on this claim.
Plaintiff's compensable injury occurred on May 5, 1995. He was unable to work for several days as a result of his injury and received temporary total disability benefits based on a compensation rate of $478.00 per week. Plaintiff has received compensation for all missed work days.
Employer-defendant completed a Form 21, accepting plaintiff's claims for a broken and dislocated jaw and four broken teeth as compensable on May 22, 1995.
By order dated August 31, 2000, and without objection by plaintiff, the Industrial Commission approved a Form 18-M entitling plaintiff to additional medical compensation related to his original injury.
The issue to be resolved concerns the amount to which plaintiff should be compensated for his permanent injuries, including a broken jaw, broken teeth, facial scaring, temporomandibular joint (TMJ) dysfunction, and loss of hearing.
The parties have stipulated into evidence the following documents:
Industrial Commission forms;
Plaintiff's medical records and report;
Form 21, submitted to employee-plaintiff by defendants on October 4, 2001;
Letter dated January 28, 2001, from Janet Rudisill of Hartford Specialty Services to Paula Barnes;
Letter dated February 21, 2001, from the North Carolina Industrial Commission to Janet Rudisill; and
Letter dated March 26, 2001, from Paula Barnes to Janet Rudisill.
 ***********
Based upon all of the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff has worked for defendant-employer, Duke Energy, since February 1981. As of May 4, 1995, plaintiff was employed by defendant-employer as a line-technician.
2. On May 4, 1995, plaintiff suffered an admittedly compensable injury by accident while employed by Duke Energy. He was injured when an air break canister exploded and struck him in the face. Following the accident, plaintiff underwent surgery at St. Joseph's Hospital in Asheville, North Carolina, on May 5, 1995, by Dr. John D. Mathieson, an Oral and Maxillofacial Surgeon. The operative report reveals that both plaintiff's right and left jaws were fractured and dislocated. Plaintiff's right jaw joint and chin were forced back into place and reconstructed using plates and screws while the left jaw joint was forced back into place and anchored with sutures. The first operation lasted six hours. Dr. Matheson continues to treat plaintiff for jaw pain and TMJ dysfunction resulting from the accident.
3. Plaintiff presently suffers from headaches and "some moderate masticatory dysfunction with limited range of motion and chronic intra-articuiar right and left TMJ pain and ear pain" and plaintiff may need "reconstructive TMJ surgery utilizing allogenic or autologous bone grafting procedures" to ameliorate his jaw problem. Plaintiff will have "lifelong TMJ dysfunction with facial pain and headaches." On August 16, 2001, X-rays taken at that time revealed that plaintiff had "a severe deformity of the left Mandibular condyle" that had been acquired as a result of the injury to plaintiff's right jaw. Plaintiff was also experiencing stomach problems from the medication he was taking for pain.
4. Plaintiff cannot open his mouth wide and has difficulty chewing food; when he does chew, his jaws "heat up." Plaintiff's jaw is not level after it was repaired.
5. Plaintiff's left jaw was fractured and dislocated but not as severely as the right jaw. During surgery, the left jaw was forced back into place and was sutured into position. The right jaw was more severely fractured and dislocated than was the left jaw. The right jaw and mandible had to be reconstructed using permanent screws and plates. Plaintiff may need further reconstructive surgery for the right jaw, but there is no indication that further reconstructive surgery of the left jaw will be needed. Plaintiff has lost motion in both jaws and has difficulty chewing with both jaws. The Full Commission finds reasonable compensation pursuant to N.C. Gen. Stat. § 97-31(24) for the left TMJ to e $8,000.00 and reasonable compensation for the right jaw to be $12,000.00, based upon the severity of injury to each.
6. On October 25, 1999, Plaintiff reached maximum medical improvement with regard to his TMJ. Dr. Matheson was not aware of any rating for such an injury, but did determine that plaintiff suffered from permanent disability due to chronic TMJ dysfunction.
7. During the course of his recovery, the plaintiff was also treated by Dr. Vollmar for dental repair. Plaintiff has had nine teeth extracted and four teeth crowned as a result of his compensable May 4, 1995, accident.
8. As a result of his May 4, 1995, accident, plaintiff complained of neck pains and headaches. He has undergone two courses of physical therapy in September 1996 and March 2000 to treat his neck and headaches. Dr. Goebel of Blue Ridge Bone and Joint released plaintiff at maximum medical improvement with regard to his neck pain and headaches on April 13, 2000, with a zero-percent rating for cervical strain.
9. Following his May 4, 1995, accident, plaintiff also complained of hearing problems. He presented first to Dr. Durham of Mountain Neurological Center on December 4, 1995. However, Dr. Durham did not find any neurological reasons for plaintiff's hearing complaint. Dr. Durham referred plaintiff to Dr. Bringaze of Asheville Head, Neck, and Ear Surgeons.
10. Dr. Bringaze performed an audiogram on plaintiff on December 29, 1995. He diagnosed plaintiff at that time with high-frequency sensorineural hearing loss with tinnitus. Dr. Bringaze did not give plaintiff a prescription for hearing aides, but suggested that plaintiff might require bilateral hearing aides in the future
11. Plaintiff returned to Asheville Head, Neck, and Ear Surgeons on March 2, 2000, and presented to Dr. Powell in that office. Dr. Powell performed another audiogram on plaintiff on March 2, 2000, and found normal hearing through 2,000 cycles per second (CPS), with a drop in hearing at the 4,000 CPS level. According to Dr. Powell, plaintiff would not be helped at the current time by hearing aides because his hearing was too good.
12. Plaintiff sought a second opinion from Dr. Lane at Western North Carolina Ear, Nose, and Throat regarding his hearing. Upon review of his March 2000 audiogram, Dr. Lane diagnosed plaintiff with a sever hearing loss bilaterally at 4,000 Hz. Again, plaintiff was informed by Dr. Lane that hearing aides would not benefit plaintiff at the time and would actually make his condition of tinnitus more annoying. According to Dr. Lane, bilateral digital hearing aides would not be useful to the plaintiff until some point in the future.
13. No physician has prescribed hearing aides for plaintiff due to hearing problems.
14. After reviewing plaintiff's medical records regarding his jaw pain and TMJ dysfunction, the Industrial Commission suggested $5,000.00 as an appropriate compensation for plaintiff pursuant to N.C. Gen. Stat. §97-31(24).
15. Plaintiff has not suffered any handicap due to facial scarring; likewise, plaintiff has not suffered a diminished earning capacity with regard to any facial scarring, nor is he likely to do so.
16. The Full Commission takes judicial notice that the term TMJ is an abbreviation for Temporomandibular Joint, or the jaw joint. In fact there are really two TMJ's, on in front of each ear. The TMJ is the joint formed by the temporal bone of the skull (temporo) with the lower jaw or mandible (hence, mandibular). These joints move each time we chew, talk or even swallow. The TMJ is actually a sliding joint and not a ball-and-socket, like the shoulder. This sliding allows for pressures placed on the joint to be distributed throughout the joint and not just in one area. The TMJ is the most complex joint in the human body. The Full Commission finds that each TMJ is a separate, important part of the body for which compensation is payable under N.C. Gen. Stat. § 97-31(24).
17. As a result of his admittedly compensable injury by accident on May 4, 1995, plaintiff has suffered injuries to his face, jaw, both TMJ's, teeth, neck, and has sustained scarring on his chin.
18. The Full Commission determines that there is a substantial risk of the necessity of future medical compensation for plaintiff due to the nature of his injuries.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Section 97-31(24) of the North Carolina General Statutes provides:
 In case of the loss of or permanent injury to any important external or internal organ or part of the body for which no compensation is payable under any other subdivision of this section, the Industrial Commission may award proper and equitable compensation not to exceed twenty thousand dollars ($20,000). N.C. Gen. Stat. § 97-31(24).
2. Plaintiff is entitled to $8,000.00 for the permanent injury to his left TMJ, an important body part, and is entitled to $12, 000 for the permanent injury to his right TMJ, a separate, important body part. N.C. Gen. Stat. § 97-31(24).
3. Plaintiff has not suffered any diminished earning capacity due to facial scarring, nor does he suffer from serious facial disfigurement. Therefore, plaintiff has failed to prove that he is entitled to compensation for serious disfigurement to his face. N.C. Gen. Stat. § 97-31(21).
4. Plaintiff is entitled to compensation for nine lost teeth and four crowned teeth pursuant to the rating guide promulgated by the Industrial Commission. Plaintiff is entitled to be recompensed for nine lost teeth at the rate of $420.00 and for four crowns at the rate of $210.00 each.
5. Plaintiff has failed to prove that he is entitled to compensation for partial hearing loss or tinnitus at the current time. N.C. Gen. Stat. § 97-53(28). However, the Commission retains jurisdiction to award additional medical compensation to plaintiff as needed should his hearing worsen for him to purchase hearing aides. Thus, the issues concerning the plaintiff's hearing and tinnitus shall remain open indefinitely for reconsideration by the Commission at a later date.
6. As a result of his compensable injury, medical treatment was necessary. Additionally, plaintiff has shown that there is a substantial risk of the necessity of future medical compensation for plaintiff. N.C. Gen. Stat. §§ 97-25, 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff, subject to attorney fees, $8,000.00 with respect to permanent damage to his left TMJ and $12,000.00 with respect to permanent damage to his right TMJ.
2. Defendants shall pay to plaintiff $4,620.00 for nine lost teeth and four crowned teeth, subject to the attorney fee set out below.
3. Defendants shall pay for all reasonable medical treatment necessary to provide relief, lessen disability, or shorten the healing period.
4. Defendants shall pay future necessary medical compensation.
5. Plaintiff's claim for serious facial disfigurement is denied.
6. Defendants shall pay directly to plaintiff's counsel 25% of compensation ordered payable in paragraphs 1 and 2 of this Award.
7. Defendants shall pay the costs.
This 17th day of September, 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER